MEYER WILSON WERNING CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

LEVIN LAW, P.A.
Jacob Polin (SBN 311203)
344 20th Street
Oakland, CA 94612
Telephone: (305) 402-9050
Email: jacob@levinlawpa.com

*Attorneys for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

GRICELDA SANTANA, on behalf of herself and all others similarly situated,

        Plaintiff,

    v.

JUSTFAB, LLC and TFG HOLDING, INC. d/b/a JustFab,

        Defendants.

Case No.

**Class Action Complaint with Jury Demand**

## INTRODUCTION

1. This case seeks to prevent a billion dollar company from obtaining a windfall at its customers' expense. Last year, the Trump Administration imposed a sweeping set of tariffs pursuant to the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 *et seq.*, which the Supreme Court recently held were unlawful. *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 646 (2026). As the federal government has acknowledged and as the Court of International Trade has ordered, the government must now refund the billions of dollars it collected in connection with the IEEPA tariffs, plus interest. The problem is that importers overwhelmingly passed the cost of IEEPA tariffs on to consumers, but only the importer has standing to seek a refund in the Court of International Trade. Therefore, importers stand to gain an enormous windfall at consumers' expense.

2. Defendants Just Fab, LLC and TFG Holding, Inc. d/b/a JustFab (hereinafter "JustFab"

1

**Class Action Complaint**

or "Defendant"), is a retail apparel and fashion company. JustFab responded to the IEEPA tariffs by raising prices to pass the costs of the tariffs on to consumers, including through a tariff surcharge on purchases made through its website. The tariff surcharge is a discrete, line-item identified on each customer's bill. It would therefore be trivial for Just Fab to refund the tariff surcharges to its customers. Yet JustFab has refused to make any legally binding commitment to do so in the wake of *Learning Resources*.

3.    Plaintiff Gricelda Santana is a JustFab customer who paid tariff surcharges in connection with the IEEPA tariffs. She bring this class action on behalf of herself and all others similarly situated, seeking restitution and disgorgement of all tariff surcharges she paid to JustFab, prejudgment interest, and other equitable and monetary relief.

**PARTIES**

4.    Plaintiff Gricelda Santana is a natural person who resides in Whittier, California, where she intends to remain. During the Class Period, Plaintiff Santana purchased goods from JustFab that were imported from countries subject to the IEEPA tariffs and paid a tariff surcharge to JustFab. Plaintiff Santana would not have paid those higher prices absent the unlawful tariffs and JustFab's pass-through of those tariffs to consumers.

5.    Defendant JustFab, LLC is a is a Delaware limited liability company with its principal place of business in El Segundo, California. Together with the other Defendant, it is responsible for the marketing, distribution, and sale of products in the United States.

6.    Defendant TFG Holding, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. It does business as JustFab. TFG Holding, Inc. is responsible for the marketing, distribution, and sale of JustFab products in the United States. A significant portion of the products JustFab sells are imported goods subject to IEEPA tariffs imposed by the United States government.

**JURISDICTION AND VENUE**

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because at least one member of the proposed Class (including Plaintiff) is a citizen of a state different from that of Defendants; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; the

2

**Class Action Complaint**

proposed Class consists of more than 100 class members; and none of the exceptions under the subsection apply to this action.

8. This Court has personal jurisdiction over Defendants because their principal place of business is located in El Segundo, California. *See* Cal. Code Civ. Proc. § 410.10. The claims of Plaintiff and all class members arise from, and are closely related to, Defendants' contacts with California. On information and belief, Defendants' acts and omissions related to the decision to collect and charge tariff surcharges emanated from its El Segundo, California headquarters. It would be fair and reasonable for the Court to exercise jurisdiction over Defendant.

9. Venue is proper because Defendants reside in the Central District of California. *See* 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

**A. The government issues IEEPA tariffs.**

10. Beginning in February 2025, President Trump issued a series of executive orders invoking the International Economic Emergency Act (IEEPA). *See* 50 U.S.C. §§ 1701(a), 1702(a)(1)(B). These executive orders imposed tariffs on goods imported from most foreign countries, including Canada, Mexico, and China.

11. The IEEPA tariffs included tariffs of 25% on imports from Canada and Mexico (Exec. Orders 14193 & 14194), escalating tariffs on imports from China reaching as high as 145% (Exec. Orders 14195, 14228, 14259, and 14266), and a baseline 10% tariff on nearly all other imports under the "reciprocal tariff" order of April 2, 2025 (Exec. Order 14257), with higher country-specific rates ranging from 11% to 50% on 57 countries.

12. President Trump also eliminated the so-called de minimis exemption, under which goods imported into the United States with an aggregate fair retail value of $800 or less were exempt from duties and taxes. *See* 19 U.S.C. § 1321(a)(2)(C). The de minimis exemption had previously allowed individual consumers to import low-value goods, such as personal purchases, gifts, and small commercial orders, without incurring any customs charges. But on April 2, 2025, President Trump issued Executive Order 14256, eliminating the de minimis exemptions for goods originating from China and Hong Kong effective May 2, 2025. On July 30, 2025, the President issued Executive Order

3

14324, suspending de minimis treatment for goods originating from all countries, effective August 29, 2025. From then on, all imported goods—regardless of value, country of origin, or mode of transportation—became subject to all applicable duties, taxes, and fees.

**B.      JustFab passes the cost of the IEEPA tariffs on to its customers through a tariff surcharge.**

13.      JustFab is a retail apparel and fashion company headquartered in El Segundo, California. The company identifies its primary location as 800 Apollo Street, El Segundo, California 90245, and describes itself as a privately held company in the "Retail Apparel and Fashion" industry. *See JustFab*, LINKEDIN (accessed June 29, 2026), https://www.linkedin.com/company/justfab/about/.

14.      JustFab has a valuation of $1 billion. *See* Jason Del Rey, *JustFab Valued at $1 Billion Following $85 Million Investment*, VOX (Aug. 28, 2014), https://www.vox.com/2014/8/28/11630360/justfab-valued-at-1-billion-following-85-million-investment.

15.      JustFab primarily sells apparel and textile products that are largely imported from overseas, including from countries that were subject to the IEEPA tariffs.

16.      JustFab sells its products directly to consumers through its website, justfab.com.

17.      While the IEEPA tariffs were in effect, JustFab imported its products to the United States from countries subject to the IEEPA tariffs prior to selling them to American consumers and therefore incurred customs charges.

18.      But JustFab did not bear the cost of the IEEPA tariffs itself; rather, it shifted the tax burden to its customers by levying a tariff surcharge on consumer transactions.

19.      JustFab began imposing tariff surcharges no later than April 2025, and it did so in direct response to the federal government's imposition of tariffs that same month.

20.      In connection with a multistate settlement with JustFab related to deceptive advertising and billing, Minnesota Attorney General Keith Ellison stated that JustFab collected tariff surcharges between 3.75% and 5.25%. *See Attorney General Ellison secures injunction and nearly $365k in settlement with clothing retailer regarding deceptive advertising and billing*, MINN. ATTORNEY GENERAL (Oct. 23, 2025), https://www.ag.state.mn.us/Office/Communications/2025/10/23_TFG-

4

**Class Action Complaint**

Holdings.asp.

21.     JustFab's surcharge is a direct admission that tariffs affected Defendant's cost structure and that Defendant chose to shift at least part of that tariff burden to consumers. Rather than absorbing the tariff costs itself, JustFab separately charged consumers a surcharge tied to those tariffs.

22.     The fact that JustFab's tariff surcharge had a variable rate confirms that JustFab was not merely passing through a uniform, government-imposed tariff rate, but rather exercised discretion in determining the amount charged to consumers. This variability demonstrates that the surcharge was a pricing mechanism controlled by JustFab, rather than a fixed or unavoidable charge dictated solely by law.

23.     Moreover, it is well-established that tariffs are economically borne by consumers, whether explicitly via surcharge or implicitly by raising prices. *See* Daniel C.K Chow & Ian M. Sheldon, *Understanding the Economic and Political Effects of Trump's China Tariffs*, 12 WM. & MARY BUS. L. REV. 273, 276 (2021) (noting the "orthodox economic theory, widely accepted by economists and trade lawyers alike, which holds that the consumers of the country imposing the tariffs—the United States—bear the brunt of the tariffs"). And empirical evidence demonstrates that the same was true of the IEEPA tariffs. *See* Robert Minton, et al., *Detecting Tariff Effects on Consumer Prices in Real Time – Part II*, BD. OF GOVS. OF FED. RESERVE (Apr. 8, 2026), https://www.federalreserve.gov/econres/notes/feds-notes/detecting-tariff-effects-on-consumer-prices-in-real-time-part-II-20260408.html;  *Tracking the Economic Effects of Tariffs*, YALE BUDGET LAB (Apr. 1, 2026), https://budgetlab.yale.edu/research/tracking-economic-effects-tariffs.  JustFab followed this same pattern in connection with the IEEPA tariffs.

24.     In addition, JustFab's own Terms and Conditions reserve the right to impose "fees associated with tariffs and surcharges," further confirming that JustFab contemplated and implemented tariff-related charges in connection with consumer purchases. *See Terms of Service*, https://www.justfab.com/policy-terms.

25.     These representations were made directly to consumers in connection with their purchases and were intended to explain the basis for the additional charge imposed at checkout.

26.     JustFab's statements constitute an express admission that: (a) tariffs increased its cost

**Class Action Complaint**

of goods, and (b) those increased costs were being passed through to consumers.

27.     As a result, consumers purchasing goods from JustFab during the Class Period were required to pay an additional amount expressly tied to tariffs, separate from the base price of the merchandise.

28.     This surcharge functioned as a direct pass-through of tariff costs from JustFab to its customers.

29.     JustFab's own explanation confirms that the surcharge was not incidental or unrelated to tariffs; rather, it was imposed specifically because tariffs increased JustFab's costs.

30.     This further confirms that JustFab treated tariffs as a cost to be incorporated into consumer pricing, whether through an explicit surcharge or otherwise.

31.     Consumers had no meaningful ability to avoid this charge other than by declining to complete their purchases, as the surcharge was imposed at checkout.

32.     As a result of JustFab's conduct, Plaintiffs and Class members paid inflated prices for JustFab products that included tariff-related surcharges.

33.     JustFab's imposition of this surcharge establishes a clear and traceable link between: (1) the IEEPA tariffs; (2) the additional charges imposed by JustFab; and (3) the amounts paid by consumers.

34.     Plaintiff and Class members paid tariff-inflated prices at JustFab during the Class Period, while JustFab now seeks to retain the consumer pass-through even though the federal government owes it a refund of the same unlawful tariff charges.

**C.      The Supreme Court declares that the IEEPA tariffs were unlawful, prompting a refund process for importers.**

35.     On February 20, 2026, the Supreme Court held "that IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628, 646 (2026). Therefore, all tariffs imposed pursuant to IEEPA are void.

36.     Importers like JustFab who paid IEEPA tariffs are now entitled to a refund plus interest through a process known as liquidation. *See* 19 U.S.C. § 1504(b). Indeed, the federal government admitted as much in its Motion for a Stay Pending Appeal filed in the Federal Circuit. *See* Mot. for

**Class Action Complaint**

Stay Pending Appeal, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812, ECF No. 6 at 28 (Fed. Cir. May 29, 2025) ("If tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues.").

37.    Consequently, the Court of International Trade recently held that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 Ct. Intl. Trade LEXIS 32, *1 (Ct. Int'l Trade Mar. 5, 2026). In order to avoid "deny[ing] entirely importers who have not filed suit the benefit of the *Learning Resources* decision," the court has ordered CPB to liquidate all entries covered by *Learning Resources* "without regard to the IEEPA duties." *Id.* at *3. "It is estimated that U.S. Customs and Border Protection ('Customs') has collected approximately $165 billion in duties pursuant to the International Emergency Economic Powers Act ('IEEPA'). These duties must now be refunded with interest, and the clock is ticking. Further interest is accumulating every day, with approximately $650 million accruing per month." *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 Ct. Intl. Trade LEXIS 36, *1 (Ct. Int'l Trade Mar. 6, 2026).

38.    Indeed, the federal government has already begun issuing refunds to importers. *See* Tony Romm, *Tariff Refunds Begin to Reach Businesses as Trump Lashes Out at Court*, N.Y. TIMES (May 13, 2026), https://www.nytimes.com/2026/05/13/business/economy/tariff-refunds-trump.html. This confirms that the tariff refunds are not speculative or hypothetical, but rather are imminent, substantial, and already in the process of being distributed to importers.

39.    As Justice Kavanaugh anticipated in his dissent, however, the refund process raises the possibility of a windfall recovery for importers: "The United States may be required to refund billions of dollars to importers who paid the IEEPA tariffs, even though some importers may have already passed on costs to consumers or others." *Learning Resources*, 146 S. Ct. at 691 (Kavanaugh, J., dissenting).

40.    JustFab has already passed on the costs of the IEEPA tariffs to consumers by charging them tariff surcharges, yet it is entitled to a refund for those same charges plus interest. Indeed, JustFab is entitled to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because JustFab previously passed

**Class Action Complaint**

tariff-related cost increases through to consumers in the form of higher retail prices, meaning JustFab now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by the Plaintiff and Class members.

41. JustFab has nevertheless refused to make any legally binding commitment to providing any sort of refund to consumers.

42. Accordingly, JustFab's retention of tariff-related surcharges—while simultaneously being owed refunds of those same tariffs—creates a concrete and immediate risk of double recovery that this Court can and should address.

### CLASS ACTION ALLEGATIONS

43. Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff seeks certification of a Nationwide Class defined as follows:

> All persons in the United States who purchased goods from JustFab during the Class Period on which JustFab imposed a tariff surcharge.

44. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff also seeks certification of the following California Subclass:

> All persons in California who purchased goods from JustFab during the Class Period on which JustFab imposed a tariff surcharge.

45. The "Class Period" is the period during which Defendant assessed tariff related charges to consumers. The precise contours of the Class Period can only be determined through discovery. In no event shall the Class Period be less than the period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement or preliminary approval of a settlement.

46. Plaintiff reserves the right to modify or amend the definition of the proposed class, Class Period, and proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

47. Excluded from the Class and Subclass are: (a) Defendants and their employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their

**Class Action Complaint**

immediate family members and associated court staff assigned to this case.

48.     *Ascertainability.* Defendants' sales records identify the customers who paid tariff surcharges during the relevant time period. These records will identify the members of the Nationwide Class and Subclass.

49.     *Numerosity.* During the Class Period, Defendants processed thousands of orders on behalf of thousands of customers, who are geographically dispersed throughout the United States. On information and belief, almost all of those orders included a tariff surcharge. Therefore, the members of the proposed Class and Subclass are so numerous that individual joinder is impracticable.

50.     *Commonality and Predominance.* This case presents questions of law and fact common to all class members, and those common questions predominate over any individualized issues. These common questions include:

a.     Whether Defendants are entitled to retain tariff surcharges for which Defendants may claim a refund;

b.     Whether Defendants' retention of tariff surcharges constitutes unjust enrichment;

c.     Whether Defendants' retention of tariff surcharges constitutes an unfair business practice under applicable consumer protection law;

d.     Whether the proper remedy for Defendants' retention of tariff surcharges is restitution, disgorgement, or another equitable remedy;

e.     Whether the tariff surcharge provision of the retail sales contract was based on a mutual mistake of law;

f.     Whether the retail sales contract contained an unlawful term;

g.     Whether the tariff surcharge provision of the retail sales contract is unconscionable;

h.     Whether an award of restitution or disgorgement for the retention of tariff surcharges must include the value of any interest refunded by the federal government; and

i.     the proper measure of restitution, damages, or other relief from JustFab's conduct.

51.     *Typicality.* Plaintiff's claims are typical of the proposed Class and Subclass. Like all class members, Plaintiff paid a tariff surcharge to Defendants in connection with the IEEPA tariffs. There are no unique defenses applicable to Plaintiff.

9

**Class Action Complaint**

52.    *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class and Subclasses. Plaintiff is aware of her fiduciary duties to absent class members and is determined to faithfully discharge her responsibilities. Plaintiff's interests are aligned with (and not antagonistic to) the interests of the Class and Subclasses. In addition, Plaintiff has retained competent counsel with considerable experience in class actions and other complex litigation. Plaintiff's counsel has done substantial work in identifying and investigating potential claims in this action, has considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class or Subclasses.

53.    *Superiority and Manageability.* A class action is superior to individual adjudications because joinder of all class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount-in-controversy for each individual class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

54.    *Declaratory and Injunctive Relief.* Defendants have acted or refused to act on grounds that apply generally to the Class and Subclasses—namely, by uniformly collecting tariff surcharges from them. The final injunctive relief or corresponding declaratory relief will be appropriate respecting the Class and Subclasses as a whole.

## CAUSES OF ACTION

### Count 1: Declaratory Relief (28 U.S.C. § 2201)

### (On Behalf of Plaintiff, the Nationwide Class, and All Subclasses)

55.    Plaintiff realleges all previous paragraphs as if fully set forth below.

56.    An actual, justiciable controversy exists between Plaintiffs and Defendants regarding the rights and obligations of the parties with respect to the tariff surcharges Defendants collected from Plaintiff and the class members. This controversy is not hypothetical or abstract: Defendants are entitled to recover the duty funds at issue from the federal government, the Supreme Court has declared the underlying tariffs unlawful, and Defendants have not refunded the tariff surcharges to

**Class Action Complaint**

Plaintiff or the class members.

57. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

a. The tariff surcharges collected by Defendants from Plaintiffs and the class members were collected pursuant to tariffs that were never lawfully authorized and that Defendants have no legal right to retain;

b. Defendants are obligated to return to Plaintiff and the class members all tariff surcharges collected from them, together with interest; and

c. Defendants are obligated to provide a full accounting of all tariff surcharges it collected from proposed Class members during the class period.

58. Declaratory relief is necessary and appropriate because Defendants collected tariff surcharges in connection with tariffs that the Supreme Court has declared were never lawfully authorized, Defendants have not returned those sums to the consumers who paid them, and Defendants are eligible to recover from the government the very funds that consumers provided to Defendants. Without judicial intervention, Plaintiff and the Class have no assurance that Defendants will return the unlawfully collected sums

59. Class members have no alternative remedy. Because Defendants served as the importer of record, only Defendants have standing to seek a refund from CBP. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid through Defendants. Without the declaratory relief sought in this action, class members will be left without any mechanism to recover the unlawful tariffs they were forced to pay.

## Count 2: Unjust Enrichment

### (On Behalf of Plaintiff, the Nationwide Class, and All Subclasses)

60. Plaintiff and the class members incorporate the above allegations as if fully set forth herein.

61. Plaintiff and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendants.

62. Plaintiff and the class members conferred a financial benefit on Defendants by paying them tariff surcharges.

11

**Class Action Complaint**

63.     Defendants appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and the class members, as they requested that Plaintiff and the class members pay the tariff surcharges.

64.     Under principals of equity and good conscience, Defendants should not be permitted to retain the tariff surcharges. The Supreme Court has declared the IEEPA tariffs unlawful. The duties were void ab initio and were never lawfully authorized. There was no lawful basis for Defendants to collect these charges from Plaintiff and Class members in the first instance. If Defendants are permitted to retain the tariff surcharges, they will obtain a windfall at the expense of Plaintiff and the class members.

65.     Plaintiff and the class members are entitled to restitution or disgorgement of all tariff surcharges they paid to Defendants, plus prejudgment interest.

## Count 3: Money Had and Received

### (On Behalf of All Plaintiff, the Nationwide Class, and All Subclasses)

66.     Plaintiff and class members incorporate the above allegations as if fully set forth herein.

67.     Plaintiff and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendants.

68.     Defendants received money from Plaintiff and the class members in the form of tariff surcharges that Defendants billed and collected from them.

69.     Defendants received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as lawfully assessed duties on imported goods. The Supreme Court has now held that the IEEPA tariffs were never lawfully authorized, rendering the predicate for Defendants' collection void ab initio.

70.     The consideration for these payments has failed in whole. Plaintiff and the class members paid Defendants to satisfy a duty or obligation that never lawfully existed.

71.     In equity and good conscience, Defendants should not be permitted to retain these funds. The money belongs to Plaintiff and the class members, and Defendants are obligated to return it.

12

**Class Action Complaint**

**Count 4: Violation of California Unfair Competition Law**

**Cal. Bus. Code § 17200, *et seq.***

**(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

72.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

73.    Defendants engaged in unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices.

74.    Plaintiff and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendants.

75.    Defendants' business practices were unlawful, particularly because they collected money that was not ultimately owed by law, are illegally holding money that belongs to Plaintiff, deceptively mislabeled a surcharge, and sought to enforce/are continuing to hold money for a surcharge was ultimately found to be unlawful.

76.    Defendants' business practices were unfair, particularly because they shifted the burden of potential compliance with the tariffs to Plaintiff but retained all benefits for themselves, including the fund of the tariff, even though that money was Plaintiff's and is owed back to Plaintiff. They are also continuing to retain funds that rightfully belong to Plaintiff.

77.    Defendants' business practices were fraudulent, particularly because they described the "Tariff" surcharge as tied to a federal tariff, even though they intended to keep those funds regardless of the status of the tariff, as evidence by their continued refusal to remit the funds paid.

78.    Defendants' retention of tariff surcharges despite their eligibility for a refund from the federal government is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm.

79.    As a result of those unlawful and unfair business practices, Plaintiff and the class members suffered an injury-in-fact and have lost money or property—specifically, the tariff surcharges they paid to Defendants.

80.    The injuries to Plaintiff and the class members greatly outweigh any alleged

13

**Class Action Complaint**

counterbalancing benefit to consumers or competition under all of the circumstances.

81. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

82. Therefore, Plaintiff and the class members are entitled to equitable relief, including restitution of all monies paid to or received by Defendants; disgorgement of all profits accruing to Defendants because of their unfair and improper business practices; an order declaring Defendants' conduct an unfair business practice; an injunction requiring Defendants to pay any refunded tariff surcharges back to Plaintiffs; and any other equitable relief the Court deems proper.

**Count 5: Breach of Contract**

**(On Behalf of Plaintiff, the Nationwide Class, and All Subclasses)**

83. Plaintiff and the members of the Class incorporate the preceding allegations by reference.

**A.   The tariff surcharge provision of the parties' retail sales contract was based on a mutual mistake of law.**

84. Plaintiff and the Class entered into a retail sales contract with Defendants.

85. One provision of that contract provided that Plaintiff and the Class would pay a tariff surcharge to Defendants.

86. At the time of the contract, the tariffs on which Defendants based the surcharge were illegal.

87. At the time of the contract, Plaintiff and Defendant shared a fundamental, erroneous belief about the law: they believed that the federal government had the right to collect those tariffs.

88. There was not, and could not have been, a true meeting of the minds on the tariff surcharge provision of the contract.

89. Plaintiff and the Class request that this Court reform the retail sales contracts to remove the tariff surcharge provision.

**B.   The retail sales contract included an unlawful term.**

90. The retail sales contracts between Plaintiff and the Class and Defendants contained several distinct objects, one of which was the tariff surcharge provision.

14

**Class Action Complaint**

91.     The tariff surcharge provision was unlawful because Defendants could not collect from Plaintiff and the Class a tax which was illegal at the time of contract formation.

92.     Under Cal. Civ. Code § 1599, the retail sales contracts are void as to the tariff surcharge provision.

**C.     The tariff surcharge provision is unconscionable.**

93.     The tariff surcharge provision of the sales contract was unconscionable at the time of formation because it was based on an illegal tariff.

94.     Plaintiff and the Class request that this Court exercise its power under Cal. Civ Code § 1670.5 to (1) refuse to enforce the unconscionable tariff surcharge provision in the sales contract; (2) strike the unconscionable tariff surcharge provision from the sales contract; and (3) enforce the rest of the sales contract without the unconscionable tariff surcharge provision.

95.     With the tariff surcharge provision removed, voided, or ruled unenforceable, Defendants must return the tariff surcharges that they collected from Plaintiff and the Class.

**PRAYER FOR RELIEF**

96.     Plaintiff and the class members demand a jury trial on all claims so triable and request that the Court enter an order:

    A.     Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel as class counsel;

    B.     Declaring that Defendants are obligated to refund to Plaintiff and the Class all tariff surcharges it collected from them in connection with IEEPA tariffs, and that Defendants are required to provide a full accounting of all tariff surcharges they collected from proposed Class members in connection with the IEEPA tariffs;

    C.     Awarding damages, disgorgement, and restitution to Plaintiff and the Class for all tariff surcharges they paid to Defendant and disgorging any refunds Defendants will receive from the federal government;

    D.     Awarding attorneys' fees and costs;

    E.     Awarding prejudgment and post-judgment interest; and

    F.     Granting such further relief as the Court deems just and proper.

**JURY DEMAND**

97.     Plaintiff demands a trial by jury on all issues so triable.

15

**Class Action Complaint**

Dated: July 8, 2026

Respectfully submitted,


By: /s/ *Matthew R. Wilson*

MEYER WILSON WERNING CO., LPA
Matthew R. Wilson (290473)
mwilson@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066


LEVIN LAW, P.A.
Jacob Polin (SBN 311203)
344 20th Street
Oakland, CA 94612
Telephone: (305) 402-9050
Email: jacob@levinlawpa.com

*Counsel for Plaintiffs and the Proposed Class*

16

**Class Action Complaint**